[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #125
In a complaint dated January 23, 1998, the plaintiff, Mariculture Products Ltd., Inc., brought this action against the defendant,[1]
Those Certain Underwriters at Lloyd's of London, seeking to recover damages for an alleged breach of an insurance contract. On November 29, 2000, the defendant moved for summary judgment on the ground that no genuine issues of material fact are in dispute and the defendant is entitled to judgment as a matter of law because Key Bank of Maine (Key Bank), the former secured creditor of the plaintiff had the legal authority to act for and on behalf of the plaintiff when Key Bank released all further claims by the plaintiff against the defendant pursuant to a proof of insurance loss form dated May 26, 1993.[2]
A motion for summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted.)Appleton v. Board of Education of Stonington, 254 Conn. 205, 209,757 A.2d 1059 (2000).
The memoranda and documentary evidence submitted by the parties reveal the following undisputed relevant facts: On March 3, 1992, the plaintiff submitted a formal claim to the defendant detailing specific losses claimed by the plaintiff as the result of a hurricane. (Defendant's memorandum, p. 3 and Exh. 28; Plaintiff's memorandum, Exh. 35.) On May CT Page 3979 26, 1993, Key Bank submitted a proof of loss form to the defendant claiming $150,000 in losses suffered by the plaintiff as a result of a hurricane; the proof of loss form purported to release all fUrther claims by the plaintiff against the defendant. (Defendant's memorandum, Exh. 34; Plaintiff's memorandum, pp. 18, 23 n. 7.) On June 15, 1993, the defendant paid Key Bank the $150,000 claimed in the proof of loss form; the $150,000 amount was a settlement figure reached between Key Bank and the defendant. (Defendant's memorandum, Exh. 35; Plaintiff's memorandum, Exh. D: Affidavit of Navon, ¶ 18.) Finally, it is undisputed that Maine law governed the transactions between the plaintiff and Key Bank. (Defendant's memorandum, p. 6; Plaintiff's memorandum, p. 25.)
The defendant asserts that the proof of loss form was executed by Key Bank "for and on behalf of [the plaintiff] and Key Bank." (Defendant's memorandum, p. 9 and Exh. 34.) The defendant argues that Key Bank's right to execute the proof of loss form was derived from a series of commercial security agreements executed between the plaintiff and Key Bank during the period spanning from August 9, 1989 through October 9, 1991. The defendant maintains that these commercial security agreements furnished the secured party, Key Bank, with broad authority including the right to execute the proof of loss form in the event that the debtor-plaintiff defaulted[3] in its obligations to Key Bank.[4] (Defendant's memorandum, Exh. 5, 9, 13, 23, 24: ¶ 4.E.) Furthermore, the defendant asserts that even in the absence of a default by the plaintiff, pursuant to the security agreements, Key Bank had the power as the plaintiff's "attorney-in-fact" to exercise any rights that the plaintiff might exercise.[5] (Defendant's memorandum, Exh. 5, 9, 13, 23, 24: ¶ 4.F.) Finally, the defendant argues that the proof of loss form discharging the defendant from all further claims is clear and unambiguous and therefore, should be given its plain meaning.[6]
In opposition, the plaintiff argues that the record before the court does not contain competent evidence that Key Bank had any authority to settle or release the plaintiff's insurance claim for losses caused by hurricane. Furthermore, the plaintiff argues that the proof of loss form submitted by Key Bank and the related payment by the defendant to Key Bank at most allows the defendant an offset against the plaintiff's recovery in the amount paid by the defendant to Key Bank. The plaintiff contends, however, that the proof of loss form does not affect any unpaid claims such as the plaintiff's prayer for compensatory damages for breach of the duty of good faith and fair dealing.[7] The plaintiff asserts that as an insurer, the defendant is not insulated from liability to its named insured, the plaintiff, merely because the defendant accepted the word of an assignee or loss payee, Key Bank. as to the extent of the Key Bank's purported interest. Furthermore, the plaintiff maintains that under Maine's Insurance Code, even if Key Bank was the plaintiff's CT Page 3980 assignee pursuant to the security agreements, Key Bank could not release or discharge the defendant because the plaintiff provided the defendant with a written objection to them doing so.[8] (Plaintiff's memorandum, Exh. D: Affidavit of Navon, ¶ 17 and Exh. 35, 52, 67.) (See also Defendant's memorandum, Exh. 28.) The plaintiff contends that the appropriate remedy for an insurer in the defendant's position is to file an interpleader action in order to determine the extent of the insurer's obligation as well as the appropriate allocation of any insurance proceeds.
The court finds that because the defendant received written notice from the plaintiff claiming its interest under the insurance policy prior to any payment by the defendant to Key Bank, the Maine statutes cited by the plaintiff[9] create a genuine issue of fact that could prevent the defendant from successfully asserting that its payment to Key Bank discharged the defendant from all further claims under the policy. Furthermore, the court finds that there are still unresolved issues as to the parties' respective rights and responsibilities notwithstanding the defendant's receipt of the written notice from the plaintiff Additionally, the court notes that summary judgment is "ill adapted to cases of a complex nature . . . which often need the full exploration of trial." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,375, 260 A.2d 596 (1969). See also Miller v. United Technologies Corp.,233 Conn. 732, 752, 660 A.2d 810 (1995) (summary judgment is ill suited to the disposal of complex cases); Fiaschetti v. Nash Engineeering Co.,
Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 115194 (May 5, 1999, Karazin, J.) (24 Conn.L.Rptr. 443) (same);Rafli v. Stumpf, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 155927, (February 9, 1998, Lewis, J.) (finding case complex and inappropriate for summary adjudication where parties filed voluminous memoranda and documentary evidence). Consequently, this court finds that genuine issues of material fact are disputed regarding the effect or impact of the written notice received by the defendant. Accordingly, the defendant's motion for summary judgment is hereby denied.
MINTZ, JUDGE.